UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SHEIKH BILAAL MUHAMMAD ARAFAT, | Case No. 22-CV-00370 (WMW/JFD) |
| Petitioner, | |
| v. | REPORT AND RECOMMENDATION |
| JEFFREY FIKES, Warden FCI-Sandstone, | |
| Respondent. | |

This case comes before the Court on Petitioner Sheikh Bilaal Muhammad Arafat's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Dkt. No. 1). The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. Because Mr. Arafat received adequate due process at his disciplinary hearing and the disciplinary decision is sufficiently supported by the record, the Court recommends that Mr. Arafat's Petition for a Writ of Habeas Corpus be denied.

I.   BACKGROUND

Mr. Arafat filed a Petition for a Writ of Habeas Corpus on February 7, 2022. ( Pet., Dkt. No. 1.) He is serving a 168-month term of imprisonment for Armed Bank Robbery, in violation of 18 U.S.C. § 2113(a) and (d). (DeLoia Decl. Ex. B at 2, Dkt. No. 17-2.) When he filed the Petition and at the time of the alleged incident, Mr. Arafat was housed at the Federal Correctional Institution in Sandstone, Minnesota ("FCI-Sandstone") (Resp't's Resp. at 2, Dkt. No. 15), but Mr. Arafat was housed most recently at a Residential Reentry

Management facility ("RRM") in Minneapolis, Minnesota, https://www.bop.gov/inmateloc (last visited Oct 6, 2022). Respondent Jeffrey Fikes is the Warden of FCI-Sandstone.

In his Petition, Mr. Arafat alleges that the Bureau of Prisons ("BOP") violated his constitutional due process rights when a BOP Discipline Hearing Officer ("DHO") imposed on Mr. Arafat the loss of 14-days good conduct time, after finding Mr. Arafat had violated Code 296, Use of the Mail for Abuses Other than Illegal Activity which Circumvent Mail Monitoring Procedure. (Pet. at 1, 5.) Specifically, Mr. Arafat was found to have sent mail for another inmate without authorization, as required under Code 296. (DeLoia Decl. ¶ 9, Ex. A at 49, Ex. D at 1.) Mr. Arafat is seeking restoration of the 14-days good conduct time. On March 21, 2022, Mr. Fikes filed a response seeking denial of the Petition. (Resp't's Resp. at 1, Dkt. No. 15.) On March 31, 2022, Mr. Arafat filed a Reply. (Dkt. No. 22.)

The alleged violation committed by Mr. Arafat occurred on July 29, 2021. (DeLoia Decl. ¶ 9.) The incident report alleges that Mr. Arafat mailed a legal document to the United States District Court, Northern District of Texas, for another inmate. (DeLoia Decl. Ex. D.) Mr. Arafat explains that he did so because the other inmate was placed in quarantine before being transferred to another prison, which meant the inmate no longer had access to the printing machine he needed to create a return label. (Pet. at 5.) Mr. Arafat's name and address were on the return address label. (DeLoia Decl. ¶ 9.) Mr. Arafat does not dispute that the incident took place. (Pet. at 5.) Rather, Mr. Arafat argues the action did not violate Code 296, as he did not circumvent mail monitoring procedures. (*Id.*)

On October 12, 2021, Mr. Arafat received a copy of the incident report (Incident Report No. 3556560) alleging the violating of Code 296. (*Id.*; DeLoia Decl. ¶ 9.) At that time, staff advised Mr. Arafat of his rights during the disciplinary proceedings that would follow. (*Id.*, Ex. D at 2.) During this interaction, Mr. Arafat stated, "[the other inmate] had already left maybe a week prior. I mailed it for him." (*Id.* ¶ 10, Ex. D at 2.) The incident was then referred to the Unit Disciplinary Committee ("UDC") for a hearing. (*Id.*)

On October 15, 2021, the UDC conducted an initial hearing. (DeLoia Decl. ¶ 11, Ex. D at 1.) During the hearing, Mr. Arafat submitted a written statement arguing (1) he ought to have been charged with Code 396, which is a lesser offense[1]; (2) the mail was subject to the same monitoring procedures as if the other inmate had sent it out; (3) due to the BOP's quarantine procedures, the inmate was unable to mail it, as he did not have access to a printer to create the return label, and the inmate gave Mr. Arafat permission to mail it; and (4) the inmate would have been denied access to the courts if Mr. Arafat had not mailed it. (DeLoia Decl. ¶ 11, Ex. D at 11-12.) Moreover, during the hearing, Mr. Arafat stressed that this was his first BOP Code violation. (DeLoia Decl. Ex. D at 1.) Following this hearing, the UDC referred the incident report to the DHO and advised Mr. Arafat of his rights. (*Id.* at 1–2, Ex. E.) Mr. Arafat was provided an opportunity to request

---

[1] The difference between a Code 296 violation and a Code 396 violation is discussed in more detail below. For present purposes, a Code 296 violation, "use of the mail for abuses other than criminal activity *which circumvent mail monitoring procedures*," is classified by the Bureau of Prisons as "high severity," while a violation of Code 396, "use of the mail for abuses other than criminal activity *which do not circumvent mail monitoring*" is classified as "moderate severity." (emphasis added). A Code 396 offense is punished less severely than a Code 296 offense. 28 CFR 541.3.

3

witnesses and a staff representative. (DeLoia Decl. Exs. E, F.) Mr. Arafat waived his right to a staff representative and declined to call any witnesses. (DeLoia Decl. Ex. F.)

On November 1, 2021, DHO Mark DeLoia conducted a DHO hearing on Incident Report No. 3556560. (DeLoia Decl. ¶ 12.) During this hearing, Mr. Arafat conceded that he did mail a court document for another inmate, and he referred to his previous arguments in his written statement during the UDC hearing. (Pet. at 5.) In addition, Mr. Arafat admitted fault, while he made the following statement: "I did mail the forms, but I did not know I couldn't do it. I was under the impression that it…wasn't circumventing because they were able to track and monitor the mail." (DeLoia Decl. Ex. G at 1.) The DHO considered the evidence, including the "Incident Report, investigation, and supporting documentation." (DeLoia Decl. ¶ 13, Ex. G at 1-5.)

Applying a greater weight of the evidence standard, the DHO concluded that Mr. Arafat's actions constituted a violation of Code 296 because Mr. Arafat sent mail for another inmate without authorization, thereby circumventing BOP mail monitoring procedures. (DeLoia Decl. ¶ 16, Ex. G at 6.)

The DHO sanctioned Mr. Arafat for this violation with the disallowance of 14 days good conduct time, 60 days of phone privileges, and 60 days of visiting. (DeLoia Decl. Ex. G at 6.)

On November 27, 2021, after failing to receive a written report within 15 days of the DHO hearing, Mr. Arafat filed a Regional Office Administrative Remedy Appeal, which was rejected on December 15, 2021, for failure to attach the DHO report and identify the charges and date of the challenged DHO action. (Pet. at 1, Exs. 1, 4.) Although this

appeal was denied, he was advised to resubmit an appeal when he received the DHO report. (Pet. Ex. 1.) On December 30, 2021, Mr. Arafat appealed to the BOP's Central Office. (Pet. at 1-2, Ex. 5.) This appeal was denied in January 2022. (Pet. at 2, Ex. 2.)

Mr. Arafat then filed this Petition on February 7, 2022. Mr. Arafat has not sought any administrative remedies after he received a copy of the DHO Report on February 9, 2022. (Boldt Decl. ¶ 13.) Mr. Arafat later filed a supplemental petition (Dkt. No. 11), which the Court deemed substantively similar to his original petition and ordered that the original petition was the operative petition (Dkt. No. 13.)

## II. DISCUSSION

A court may grant habeas relief under 28 U.S.C. § 2241 to a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A review of a BOP decision, such as a revocation of good time credits, falls under 28 U.S.C § 2241. *Morganfield v. Rios*, No. 17-CV-304 (WMW/FLN), 2018 WL 6069641, at *2 (D. Minn. Aug. 28, 2018), *R. & R. adopted*, 2018 WL 6067512 (D. Minn. Nov. 20, 2018). In reviewing a habeas petition, courts are not to reweigh the evidence and will defer to the BOP's decision if the record contains "some evidence" for it. *See Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455-56 (1985).

### A. Jurisdiction

To entertain a habeas petition, a federal court must first be assured that the petition is properly before it. The Court's jurisdiction over this Petition is proper under § 2241 because Mr. Arafat is in the BOP's custody and challenges the fact or duration of his confinement—here, the loss of 14 days of good conduct time from his sentence. Although

Mr. Arafat has been released from FCI-Sandstone to an RRM, he is still subject to the authority of the BOP, and thus, he is still "in custody" for the purpose of federal habeas review. *Wilson v. Fikes*, No. 21-CV-606 (WMW/KMM), 2021 WL 6932190, at *1 (D. Minn. Nov. 10, 2021), *R. & R. adopted*, 2022 WL 484959 (D. Minn. Feb. 16, 2022); *Schmanke v. U.S. Bureau of Prisons*, 847 F. Supp. 134, 136 n.3 (D. Minn. 1994). Therefore, this Court still has jurisdiction over the Petition.

### B. Administrative Exhaustion

A prisoner must also have exhausted his administrative remedies before filing a habeas petition. *Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009). Here, Mr. Arafat asserts that he has exhausted his administrative remedies (Pet. at 2), and Mr. Fikes is not seeking dismissal of Mr. Arafat's Petition for lack of exhaustion (Resp't's Resp. at 13). Because the record shows that Mr. Arafat appealed the DHO's decision to the Regional Office, appealed the Regional Office's denial to the Central Office, and waited the requisite 30 days without any response, the Court concludes that Mr. Arafat has exhausted his administrative remedies.

### C. Evidentiary Hearing

Habeas petitioners may sometimes be granted an evidentiary hearing. An evidentiary hearing is required "when there are genuine factual disputes." *Peltier v. United States,* No. 14-CV-1398 (PJS/HB), 2015 WL 1746581, at *6 (D. Minn. Apr. 16, 2015) (holding that when an asserted claim can be resolved on the existing record and when there are no factual disputes, the petitioner is not entitled to an evidentiary hearing). Here, Mr. Arafat does not dispute the facts alleged by the DHO, but instead asserts that his conduct

6

either does not fall under Code 296 or that he should have been charged with a Code 396 lesser offense. (Pet. at 5-7; DeLoia Decl. ¶ 11, Ex. D at 1.) Moreover, part of Mr. Arafat's argument focuses on the idea that he did not have sufficient notice in order to file an appeal, depriving him of his due process rights. (Pet. at 5.) Therefore, "[b]ecause the Court can resolve [Mr. Arafat's] Petition by relying on the record, an evidentiary hearing is not necessary." *Walton v. Fikes*, No. 21-cv-1269 (KMM/ECW), 2022 WL 1652658, at *10 (D. Minn. Apr. 22, 2022); *see Wallace v. Lockhart*, 701 F.2d 719, 729-30 (8th Cir. 1983) ("[D]ismissal of the habeas petition without a hearing is proper where . . . the dispute can be resolved on the basis of the record.") (citation omitted).

### D. Due Process

The Fifth Amendment provides procedural protections against arbitrary actions of the United States that affect an individual's life, liberty, or property. *See* U.S. Const. amend V. A due process claim requires "some legal entitlement, right or liberty interest that is protected under state or federal law." *Peck v. Hoff*, 660 F.2d 371, 373 (8th Cir. 1981) (citations omitted). The loss of a prisoner's liberty interest triggers due process protections; however, "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Hill*, 472 U.S. at 456. Instead, in federal inmate disciplinary cases, federal courts must ensure that the BOP has followed the due process procedures established in *Wolff v. McDonnell*, 418 U.S. 539 (1974). *Wolff* established that, because inmate disciplinary hearings do not carry the same risk of error that criminal trials do, prison disciplinary proceedings need not provide all of the procedural and substantive protections afforded to

a defendant in criminal proceedings. *Id.* at 567-68. Pursuant to *Wolff*, due process in inmate disciplinary hearings is satisfied by providing the inmate with: (1) advance written notice of the charges not less than 24 hours before the hearing; (2) an impartial hearing body; (3) the right to call witnesses and present documentary evidence in their defense; (4) assistance with complex cases or to mitigate illiteracy; and (5) the factfinder's written decision that includes the evidence relied upon and the reasons for the disciplinary outcome. *Wolff*, 418 U.S. at 540-41.

Mr. Arafat received sufficient due process to satisfy the *Wolff* standard. He received a copy of the incident report on October 12, 2021 (Pet. at 5; Pet. Ex. 3; Resp't's Resp. at 4); a notice of the disciplinary hearing with his right to call witnesses, present evidence, and have staff representation (DeLoia Decl. ¶ 10, Ex. D at 2); a hearing before the DHO at which Mr. Arafat declined to be represented by staff or call witnesses, although he could have done so (DeLoia Decl. ¶ 10, Ex. F); and, although later than anticipated, the DHO's written report explaining the evidence relied upon and resulting sanctions imposed (DeLoia Decl. ¶ 12, Ex. G at 6).

Mr. Arafat asserts that "without the DHO's statement of the evidence relied upon and the reasons for the guilty finding, [Mr.] Arafat did not have the notice he needed in order to prepare his appeal." (Pet. at 5.) While the BOP's delivery of the DHO's report was delayed, the delay was a harmless error because, under the BOP's policies, Mr. Arafat would still have been able to file a timely appeal once he received a copy of the report. *See Adams v. Fed. Bureau of Prisons*, No. 11-CV-2862 (MJD/SER), 2011 WL 7293381, at *2-3 (D. Minn. Dec. 6, 2011) (explaining that federal courts have held that in prisoner

disciplinary cases, habeas petitioners must show that the outcome of the disciplinary proceedings would have been different absent the procedural error). Moreover, the harmlessness of the error is self-evident—Mr. Arafat actually did appeal the DHO's decision, and that appeal led to administrative exhaustion and the filing of this Petition. (Pet. at 4-5.)

Citing *Hawkins v. Sproul*, No. 18-CV-2206-NJR, 2020 WL 1905170 (S.D. Ill. Apr. 17, 2020), Mr. Arafat argues that, without the DHO report, he "did not have the notice he needed in order to prepare his appeal." (Pet. at 5.) However,

> [w]hile the Court does not dispute that an inmate has a due process right to notice of the case against him, [the petitioner] was provided notice in accordance with *Wolff* by virtue of the Incident Report, which set forth the violations he was accused of, as well as the supporting evidence; he was advised of his rights related to the disciplinary hearing (including the right to call witnesses); he was provided with a Notice of Disciplinary Hearing; he appeared at the hearing choosing to waive his previously requested witnesses; he received a late DHO report; and was allowed to exhaust the administrative appeals process. In other words, [the petitioner] had sufficient notice of the case against him for the purposes of due process.

*Walton*, 2022 WL 1652658, at *7.

The Court turns now to whether the DHO's decision was based on "some evidence in the record." *See Hill*, 472 U.S. at 454. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56 (citations omitted). If a court finds that there is "some evidence" supporting the DHO's findings, such as statements, testimony, or a written incident report, the court must reject a petitioner's evidentiary challenge and uphold the DHO's finding.

9

*Id.* at 456-57 (finding even "meager," indirect evidence still sufficient as "some evidence" so long as "the record is not so devoid of evidence" that the decision was "without support or otherwise arbitrary").

Mr. Arafat asserts that no evidence supports the allegation that he circumvented the BOP's mail monitoring procedures in violation of Code 296. (Pet. at 5-6; Pet'r's Reply at 2.) Moreover, Mr. Arafat states that his "mailing was done with full disclosure and was subject to mail monitoring." (*Id.*) Lastly, he argues that, if anything, he should have been charged with a Code 396 lesser offense. (DeLoia Decl. ¶ 11.) His argument relies upon the text of Code 296. (Pet. at 7.) Code 296 is described by BOP Inmate Discipline Program Statement 5270.09 as the

> "[u]se of the mail for abuses other than criminal activity *which circumvent* mail monitoring procedures. (e.g., use of the mail to commit or further a High category prohibited act, special mail abuse; writing letters in code; directing others to send, sending, or receiving a letter or mail through unauthorized means; *sending mail for other inmates without authorization;* sending correspondence to a specific address with directions or intent to have the correspondence sent to an unauthorized person; and using a fictitious return address in an attempt to send or receive unauthorized correspondence)." (DeLoia Ex. A at 49 (emphasis added).)

Code 396 is described by the same BOP Program Statement as the "[u]se of the mail for abuses other than illegal activity *which do not circumvent* mail monitoring; or use of the mail to commit or further a Moderate category or prohibited act." (*Id.* at 53 (emphasis added).) Thus, one key difference between a Code 296 violation and a Code 396 violation is whether the prisoner's actions do or do not circumvent the BOP's monitoring abilities, with a higher severity violation where the BOP is unable to monitor a prisoner's mail. Further, "[p]rison officials have discretion to impose disciplinary sanctions, and unless the

10

exercise of that discretion is arbitrary or unreasonable, the sanctions must be upheld." *Hewlett v. Warden, FMC Rochester*, No. 18-cv-2293 (WMW/LIB), 2019 WL 3557628, at *5 (D. Minn. Apr. 30, 2019); *Glouser v. Parratt*, 605 F.2d 419, 420-21 (8th Cir. 1979); *Hodge v. Fisher*, No. 10-cv-769 (RHK/JJG), 2011 WL 886200, at *3 (D. Minn. Feb. 9, 2011), *R. & R. adopted*, 2011 WL 884390 (D. Minn. Mar. 14, 2011).

Mr. Arafat argues that the specific language used in these Codes demonstrates that his conduct of sending mail for another inmate on July 29, 2021 did not rise to a violation of Code 296. (Pet. at 5-7; Pet'r's Reply at 2.) Pointing specifically to the requirement of Code 296 that an inmate must "circumvent the ability of staff to monitor" (Pet. at 3), Mr. Arafat states that his "mailing was done with full disclosure and was subject to mail monitoring" (Pet'r's Reply at 2). Mr. Arafat argues that he did not circumvent mail monitoring procedures because he fully disclosed his action to BOP staff and the Court by identifying himself through a Certificate of Service. (Pet. at 6.)

However, there is "some evidence" that Mr. Arafat's actions violated Code 296. While Mr. Arafat is correct that BOP officials were able to identify who sent the mail on July 29, his actions still impeded important aspects of BOP mail monitoring. These impediments included BOP "staff's ability to determine whether the mail recipient is someone the inmate is prohibited from communication with and the mail recipient's ability to know the mail is coming from a federal prison." (DeLoia Decl. ¶ 16.) Mr. Arafat did, in fact, send mail for another inmate without authorization. To the BOP, that the recipient of the mail was a Court was not material, as it still violates BOP policies regarding mail monitoring and mail regulation.

11

Moreover, although Mr. Arafat asserts that "no evidence supports [his] mailing circumvented mail monitoring" (Pet'r's Reply at 2), the DHO relied on "the Incident Report, as well as the other documentation provided by staff, and Arafat's statements to the investigating Lieutenant, during the UDC hearing, and testimony during the DHO hearing" in reaching that decision. (DeLoia Decl. ¶ 15.) Those materials contain facts sufficient to demonstrate that Mr. Arafat's conduct of sending mail for another inmate's issue prevented BOP staff from being able to monitor both his and the other inmates mail for compliance with BOP policies. Because the DHO based his decision upon this evidence, and because that evidence satisfies the "some evidence" standard, the DHO's decision is entitled to this Court's deference. Mr. Arafat's argument that there is no evidence to support the charge of a Code 296 violation is, therefore, not persuasive.

Mr. Arafat also raises a statutory interpretation argument, stating that his conduct does not fall into the examples of prohibited conduct listed in Code 296. (Pet. at 7; Pet'r's Reply at 2.) Code 296 lists several examples of conduct that is considered to circumvent mail monitoring procedures. Mr. Arafat argues "not all sending mail for other inmates without authorization can be deemed to circumvent mail monitoring procedures." (Pet. at 7.) As Mr. Arafat concedes, however, "the text simply lists it as an example." That is the exact purpose: to provide clear guidance on what is considered a violation of Code 296. Mr. Arafat's conduct clearly falls into the category of Code 296, by way of the example listed: "sending mail for another inmate without authorization." *See* 28 C.F.R. § 541.3, Table 1, Code 296.

In sum, because the BOP met the requirements of *Wolff* and *Hill* in affording Mr. Arafat adequate due process for his disciplinary proceedings, and because there is "some evidence" that Mr. Arafat engaged in the prohibited conduct in Code 296, the Court recommends that Mr. Arafat's Petition be denied, and this action be dismissed with prejudice.

## III. RECOMMENDATION

Based upon the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner Sheikh Bilaal Muhammad Arafat's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Dkt. No. 1) be **DENIED**;

2. This action be **DISMISSED WITH PREJUDICE**; and

3. **JUDGMENT BE ENTERED ACCORDINGLY**.

Date: October 12, 2022                     *s/ John F. Docherty*
                                           JOHN F. DOCHERTY
                                           United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).